WATERMAN, Justice
(concurring in part and dissenting in part).
I respectfully concur in part and dissent in part. I agree with the majority’s affir-mance of the district court’s findings that attorney Laubenthal violated Iowa Rule of Civil Procedure 1.413(1) and that the imposition of sanctions is warranted. And, I agree with the majority that the district court, under the circumstances of this case, abused its discretion by directing payment of the monetary sanction into the Crawford County Jury and Witness Fund rather than to the victims. I must dissent, however, on the amount of the sanction, $1000, which in this context is so low as to constitute another abuse of discretion.
Citing Barnhill v. Iowa District Court, 765 N.W.2d 267, 276 (Iowa 2009), the majority correctly recognizes “the primary purpose of sanctions under rule 1.413(1) is deterrence, not compensation.” But, victim compensation remains a subsidiary goal of the rule, as the majority also acknowledges. See Barnhill, 765 N.W.2d at 279 (“[A] $25,000 sanction is appropriate both to deter Barnhill (and other attorneys) from similar conduct in the future and to partly compensate [the victim] for expenses incurred.”). Neither goal is served by this slap on the wrist. The victims in this case incurred fees totaling $63,926 defending the frivolous claims through appeal. Laubenthal did not challenge the reasonableness of those fees. Those fees are a factor to determine the appropriate amount of a monetary sanction. Id. at 276-77. Curiously, the majority cites Barnhill for other propositions without noting the $25,000 sanction we so recently approved in that case for analogous misconduct. It is difficult to understand how a sanction of one sixty-fourth of the victims’ expenses sends the right message here.
*594 The majority opinion gives short shrift to the underlying facts warranting sanctions. The victims were forced to spend several years defending the fraud and conspiracy claims found so meritless as to be sanctionable. Laubenthal continued to litigate those claims despite lacking evidence or caselaw to support them. He vigorously resisted the victims’ motions for summary judgment, even though he could not back up his client’s claims after conducting discovery. “Summary judgment is not a dress rehearsal or practice run; it ‘is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.’ ” Hammel v. Eau Galle Cheese Factory, 407 F.8d 852, 859 (7th Cir.2005) (citation and internal quotation marks omitted). Today’s majority fails to mention the criticism by Judge Jacobson, who granted summary judgment against Laubenthal’s client:
At the time they were served, interrogatories and requests for production of documents many months ago, Plaintiffs apparently had no evidence to support the allegations in the petition against these defendants. Despite a motion to compel, the plaintiffs still were not able to produce any such evidence. After the court’s order of December 21, 2006, the plaintiffs were unable to produce any such evidence. When asked directly at both the January 29 hearing and the February 23 hearing, “Where is your evidence?” Neither of plaintiffs’ attorneys were able to provide any whatsoever.
[[Image here]]
Plaintiffs have not only been challenged to produce evidence of such a tort by the court’s rulings, but have been challenged to do so in open court, in the court’s chambers, at least three times. The court cannot help but believe if this evidence existed, the court would have seen it by now.
Laubenthal did not stop there. He appealed despite the lack of evidence to support these claims. The court of appeals, in affirming summary judgment, noted “plaintiff points us to no case law identifying similar conduct as actionable.” Rowedder v. Helkenn, No. 08-0117, 2009 WL 1492558, at *7 (Iowa Ct.App.2009). Rule 1.413 allows ample room for creativity and “fight[ing] uphill battles.” Barnhill, 765 N.W.2d at 279. Laubenthal, however, crossed the line “between zealous advocacy and frivolous claims.” Id. This record warrants a sanction much larger than $1000, particularly given the considerable amount of scarce judicial resources needlessly spent on these frivolous claims. See id. at 273 (noting that, by deterring frivolous lawsuits, sanctions “avoid the general cost to the judicial system in terms of wasted time and money”).
The district court, with the apparent approval of today’s majority, justified the low amount by noting the accompanying “stigma” of court-ordered sanctions. Stigma will accompany every judicial finding sanctioning an attorney, and any court-ordered sanction would be an anathema to most Iowa lawyers. Yet no authority is cited for the proposition that a low-dollar sanction can be justified by the accompanying stigma. “Stigma” is not one of the sixteen factors in the American Bar Association guidelines or the four Kunstler factors we encouraged courts to apply in Barnhill. Id. at 276-77 (citing In re Kunstler, 914 F.2d 505, 523 (4th Cir.1990); ABA Section of Litigation, Standards and Guidelines for Practice Under Rule 11 of the Federal Rules of Civil Procedure (1988), reprinted in 121 F.R.D. 101,125-26 (1988)). Nor is the stigma of a sanction mentioned as a factor to consider in setting the dollar amount in any of the numerous cases applying the Federal Rule of *595 Civil Procedure 11, the counterpart to our rule 1.413(1). Laubenthal made no record that the stigma of this sanction would impact his practice. No substantial evidence in the record supports a finding that stigma enhanced his sanction. Accordingly, the district court misapplied the law by relying on stigma to justify the low amount. This misapplication of the law is an abuse of discretion. Everly v. Knoxville Cmty. Sch. Dist., 774 N.W.2d 488, 492 (Iowa 2009) (“Although our review is for an abuse of discretion, we will correct erroneous applications of law.”).
More importantly, the $1000 sanction is a small downside to the large upside Lau-benthal apparently saw in this case when he agreed to a one-third contingent fee for all recoveries in a written agreement acknowledging “[i]n excess of $200,000 has been fraudulently obtained.” The tension between fear and greed regulates much human behavior, including tax compliance and hardball litigation. What is the deterrent effect of a $1000 sanction when the lawyer anticipates a potential fee over sixty times that amount? See Barnhill, 765 N.W.2d at 278 (noting a larger sanction needed for deterrence in cases “where there is a potential for a hefty settlement”). Notably, Laubenthal offered no evidence of an inability to pay a larger sanction. Cf. id. at 277 (affirming $25,000 sanction despite Barnhill’s statement “a large sanction will put [my firm] out of business”).
In Barnhill, we approvingly quoted federal appellate precedent concluding “de minimis sanctions are ‘simply inadequate to deter Rule 11 violations.’ ” Id. at 276 (quoting Rentz v. Dynasty Apparel Indus., Inc., 556 F.3d 389, 400-02 (6th Cir.2009) (reversing $2500 sanction as so low as to be an abuse of discretion)). We specifically concluded a sanction of less than $25,000 against Barnhill would be insufficient “ ‘to deter repetition of such conduct or compa-rabie conduct by others similarly situated.’” Id. at 278 (quoting Fed.R.Civ.P. 11(c)(4)). We noted in Barnhill that the Sixth Circuit determined “a $2,500 sanction was not sufficient to deter where defendants incurred nearly $30,000 in attorneys’ fees due to sanctionable conduct.” Id. (citing Rentz, 556 F.3d at 402). Yet, three years later the majority now concludes a $1000 sanction is sufficient despite victim fees exceeding $63,000.
Today’s majority pays lip service to the primary goal of our. rule — deterrence— while approving a de minimis sanction. In Barnhill, we noted “the twin purposes of compensation and deterrence set forth in our case law” were served by the sanction of $25,000 when that victim’s fees were $148,596. Id. at 277. Applying the same one-to-six ratio here warrants a sanction of $10,500. The Eighth Circuit affirmed a $25,000 sanction imposed sua sponte by Chief Judge Pratt, noting it was approximately three-fourths the victim’s fees and expenses. MHC Inv. Co. v. Racom Corp., 323 F.3d 620, 621, 627-28 (8th Cir.2003). That case involved similar misconduct, sanctioning counsel who “persisted in asserting claims and defenses which were not justifiable either in law or in fact.” Id. at 626. As here, the sanctioned attorneys had previously unblemished records and impressive credentials. As here, the district court found the counsel in Ra-com Corp. violated the rule by continuing to litigate claims and defenses discovery revealed to be meritless. Id. But, unlike here, the sanction upheld in Racom was calibrated to send the right message.
I would reverse the $1000 amount of the sanction and remand for the district court to enter a sanction of at least $10,000 payable to the victims in equal parts.