# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3162

_____

| | | |
|---|---|---|
| MHC Investment Co., | * | |
| | * | |
| Plaintiff, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Southern |
| | * | District of Iowa. |
| Racom Corporation, | * | |
| | * | |
| Defendant, | * | |
| | * | |
| Shuttleworth & Ingersoll, | * | |
| | * | |
| Appellant. | * | |
| | * | |
| _____ | * | |
| | * | |
| Racom Corporation, | * | |
| | * | |
| Third Party Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| Ronald W. Stepien, Dennis H. Melstad, | * | |
| David Sokol, | * | |
| | * | |
| Third Party Defendants. | * | |

_____

Submitted: January 17, 2003
Filed: March 17, 2003

_____

Before MORRIS SHEPPARD ARNOLD, BRIGHT, and SMITH, Circuit Judges.
_____

BRIGHT, Circuit Judge.


MHC Investment Company (MHC), a subsidiary of MidAmerican Energy, invested $10 million in Racom Corporation (Racom), a seller and servicer of two-way radio equipment and systems. MHC filed suit against Racom alleging breach of contract. Racom hired the law firm of Shuttleworth & Ingersoll (Shuttleworth). Racom responded by pleading affirmative defenses of fraudulent inducement, lack of authority on the part of Racom's Board of Directors (Board) to enter the agreement, and lack of consideration. Racom also filed counterclaims against MHC for fraud, slander per se, breach of fiduciary duty, and civil Racketeer Influenced and Corrupt Organization Act (RICO) 18 U.S.C. §§ 1961-1968. MHC moved for summary judgment on Racom's counterclaims. Racom moved to extend summary judgment proceedings pursuant to Federal Rule of Civil Procedure 56(f), so that it could conduct further discovery. The district court[1] denied Racom's motion and its motion to reconsider. Then, the district court granted MHC's motions for summary judgment.

The district court asked Shuttleworth to explain why the district court should not *sua sponte* impose sanctions against Shuttleworth for pursuing frivolous defenses and claims and attempting to delay payment of more than $10 million that Racom owes MHC. After a show cause hearing, the court, in a written opinion, determined that Shuttleworth violated Federal Rule of Civil Procedure 11. The court ordered sanctions to be paid to the court in the amount of $25,000. Shuttleworth appeals, arguing that the district court erred in imposing sanctions. We affirm.

_____

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

I.    BACKGROUND

On July 16, 1996, MHC (through its predecessor-in-interest MidAmerican Capital Company) invested $10 million in Racom by purchasing preferred stock in Racom.[2]  As part of the stock purchase agreement, MHC gained two of seven seats on Racom's Board.  Eventually, Dennis Melstad, MHC's president, and Ronald Stepien held MHC's two seats on the Board.  Stepien served as the vice president, and later president, of MidAmerican Energy.

The stock purchase agreement also gave MHC a "put" on its preferred share, by which MHC could tender the preferred share back to Racom for its original price, in addition to any accrued or unpaid dividends, in the event that Racom did not meet certain specified financial conditions by July 16, 2001.  Under this provision, MHC would have until September 16, 2001, to tender the put and then Racom was required to meet the obligation with cash within ninety days of receiving MHC's notice of exercising its right.

On June 29, 1998, MHC loaned Racom $9.75 million for one year to resolve a dispute with another shareholder.  After one year, MHC extended the loan at a higher interest rate.

In January 1999, MHC accepted forty-five shares of Racom's common stock in exchange for its forbearance of certain rights relating to payment of dividends due but not paid.  In addition, the common stock agreement also stated that Racom would issue an additional 280 shares of common stock should MHC exercise its put right.

---

[2]The Series A Preferred Stock had a cumulative dividend rate of eight percent per annum with dividends payable semi-annually.  Dividends were deferred for the first two years.

Beginning in mid-2001, Melstad, on behalf of MHC, began preparing for MHC's exit from Racom. On September 12, 2001, MHC exercised its put right. MHC estimated that Racom was obligated to pay $15,155,366.60 based on accrued and unpaid dividends.[3] After MHC exercised its put rights, Racom removed Melstad and Stepien from Racom's Board.

This resulted in MHC filing two lawsuits in November 2001 against Racom in Delaware, Racom's place of incorporation. In the first lawsuit, MHC and Melstad sought inspection of certain corporate books and records of Racom. The second lawsuit alleged that Racom illegally removed MHC's representatives from Racom's Board. A different law firm represented Racom in the Delaware action.

On December 10, 2001, Racom filed a declaratory action in Iowa state court, seeking a determination of the validity of certain actions of Racom's Board and the validity of the original stock purchase agreement. MHC removed the case to federal court in Iowa.[4]

On December 12, 2001, MHC filed the instant action seeking repayment of the loan and the issuance of additional common stock. Before Racom had an opportunity to respond, MHC moved for summary judgment on January 2, 2002.

---

[3]Around this time, Racom hired Shuttleworth to represent its interests. Racom had other long time counsel. However, that counsel had a conflict of interest and contacted Shuttleworth to take over representation of Racom.

[4]According to Shuttleworth, the district court dismissed this action after the parties finalized a settlement.

Approximately three weeks later, Racom deposed Melstad, Stepien, Garry Osborn,[5] and Gregg Miller[6] in the Delaware litigation. In addition, MHC produced approximately 2500 pages of documents for the Delaware litigation, which included a partially redacted MHC "Exit Strategy" memo. The parties had not conducted or requested any discovery in the Iowa litigation.

On January 17, 2002, Shuttleworth filed an answer and counterclaim on behalf of Racom to the Iowa federal claims. The pleadings asserted compulsory counterclaims of fraud, RICO, slander per se, and breach of fiduciary duty. Shuttleworth asserted defenses of fraudulent inducement, lack of corporate board authority, and lack of consideration. Shuttleworth believed that MHC had committed fraud in order to takeover Racom's business, that Melstad and Stepien did not act in the best interest of Racom, that Melstad and Stepien had not been elected by Racom's shareholders as provided for in Racom's charter, and that several agreements between MHC and Racom were invalid.

On March 8, 2002, MHC filed a motion for summary judgment on Racom's counterclaims in the Iowa case. Racom responded by filing for a continuance pursuant to Federal Rule of Civil Procedure 56(f), requesting ninety days to conduct discovery, including the opportunity to depose Stepien, Melstad, and David Sokol.[7] After reviewing the Delaware depositions, including Stepien's and Melstad's Delaware depositions, the district court denied Racom's motion, concluding that further discovery was not "likely to uncover any information helpful to Racom in defeating the motions for summary judgment." (App. at 161.) Racom then filed a

---

[5]Osborn is vice president of financial services for MidAmerican.

[6]Miller is the president of Racom.

[7]Sokol was the chief executive officer of MidAmerican Energy Company. Sokol had not been deposed in the Delaware litigation.

motion for reconsideration, explaining the discovery conducted in the two Delaware lawsuits was unrelated to its counterclaims. The district court also denied Racom's motion for reconsideration.

As previously stated, the district court ordered a show cause hearing to allow Shuttleworth an opportunity to explain why the district court should not impose sanctions against it. At the hearing, Shuttleworth called five attorneys as witnesses. Four of the witnesses were Shuttleworth attorneys: Kevin Collins, the partner responsible for the case; Sarah Gayer, the associate who drafted the resistances to MHC's summary judgment motions; Caroll Reasoner, a partner with the firm specializing in corporate law who consulted with Collins and Gayer on the case; and Bob Houghton, who testified to the prestige of the law firm and the accomplishments of its attorneys. Finally, H. Richard "Dick" Smith, a long time Iowa practitioner, testified that in his professional judgment Shuttleworth did not violate Rule 11 because they acted reasonably and in good faith. The court determined that Shuttleworth and its attorneys violated Rule 11 by pursuing frivolous defenses and claims with the purpose of delaying payment to MHC. The court sanctioned Shuttleworth in the amount of $25,000. Shuttleworth timely appeals.

## II.   DISCUSSION

### A.   Rule 11 Standards

Rule 11 sanctions are imposed only in response to claims that are not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law." Fed. R. Civ. P. 11(b)(2). This standard is applied with particular strictness where, as here, the sanctions are imposed on the court's own motion. In that circumstance–unlike the situation in which an opposing party moves for Rule 11 sanctions–there is no "safe harbor" in the Rule allowing attorneys to correct or withdraw their challenged filings. See Fed. R. Civ. P.

11(c)(1)(A). Here, the district court determined that Shuttleworth violated Rule 11(b)(1) and (b)(2). Federal Rule of Evidence 11 reads, in pertinent part:

> (b) **Representations to Court**. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, –
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law . . . .

Fed. R. Civ. P. 11.

We review the district court's imposition of sanctions under Rule 11 for the abuse of discretion. See Black Hills Inst. of Geological Research v. South Dakota Sch. of Mines & Tech., 12 F.3d 737, 745 (8th Cir. 1993). We will only reverse a sanction when the district court based its decision "on an erroneous view of the law or on a clearly erroneous assessment of the evidence." See Cooter & Gell v. Hartmarx Corp, 496 U.S. 384, 405 (1990); see also Miller v. Bittner, 985 F.2d 935, 938 (8th Cir. 1993). We give "[d]eference to the determination of courts on the front lines of litigation" because these courts are "best acquainted with the local bar's litigation practices and thus best situated to determine when a sanction is warranted." Cooter & Gell, 496 U.S. at 404. "Such deference will streamline the litigation process by freeing appellate courts from the duty of reweighing evidence and reconsidering facts already weighed and considered by the district court; it will also discourage litigants from pursuing marginal appeals, thus reducing the amount of satellite litigation." Id.

Reviewing the district court's imposition of Rule 11 sanctions necessarily requires an examination of the underlying factual and legal claims, as well as the appropriateness of the sanction imposed. See Id. at 399.

B.     Racom's Defenses and Counterclaims

As stated previously, Shuttleworth, on behalf of Racom, asserted several defenses and counterclaims against MHC. We will address each individually.[8] In its written Rule 11 opinion, the court focused on fraud, fraudulent inducement and lack of consideration.[9]   The court discussed the remaining claims in the summary judgment opinion.

At the outset, the district court noted that Racom's claims lacked a specific allegation of any representation that was false or a particular concealed fact. See Rosen v. Bd. of Med. Exam'r of Iowa, 539 N.W.2d 345, 349 (Iowa 1995) (listing elements of fraud and fraudulent inducement).  Instead, Shuttleworth maintained that

---

[8]Shuttleworth filed a counterclaim against MHC for civil RICO.  Shuttleworth did not resist MHC's motion for summary judgment on the RICO claim.  Therefore, it is not part of the sanction issue.

[9]The court explained:

> At the hearing, the Racom attorneys did not volunteer much testimony on the substantive grounds for why they believed there was a factual or legal basis for the claims and defenses they asserted; however, the Court did have an opportunity to query them on some, particularly their fraud defense, their fraud counterclaim, and their lack of consideration defense.  The Court had less time to explore other claims; however, their lack of sufficiency was thoroughly covered in the summary judgment order.

(App. at 413.)

MHC fraudulently concealed their intent to defraud Racom and take over the company. The court explained that the issue was "whether concealing the intent to negotiate a series of transactions as advantageous to oneself as possible, without any further misrepresentations or concealment, and without regard to the welfare of the transaction partner, constitutes fraud." (App. at 415.) The court noted that Racom initially did not give up control of its Board, with only two of the seven members on the Racom Board represented by MHC. Further, the court noted that the other five board members made the same informed decisions.

The district court also determined that Shuttleworth failed to show any evidence of fraud. Shuttleworth responds that it could have produced evidence had the district court provided it with an opportunity to conduct discovery. However, Shuttleworth has failed to articulate what additional evidence it sought to support its claims. Shuttleworth also fails to explain why it did not conduct any discovery after MHC filed the Iowa lawsuit. The district court could properly determine that Racom's claims of fraud and fraudulent inducement did not have any basis in fact, nor did it rest on any legal grounds.

Second, the district court also examined Racom's affirmative defense of lack of consideration. Shuttleworth, on behalf of Racom, presented the argument that because MHC agreed to forebear on the dividend payments owed to them, the forbearance was not adequate consideration to support the bargain. We determine that the district court did not err in concluding that the argument lacked any legal basis. See Federal Land Bank of Omaha v. Woods, 480 N.W.2d 61, 65 (Iowa 1992) ("'Consideration' is either a benefit given or to be given to the person who makes the promise [or some other person] or a detriment experienced or to be experienced by the person to whom the promise is made [or some other person].").

Third, Shuttleworth based Racom's breach of fiduciary duty on two incidents, the 1999 Agreements and Melstad's participation in MHC's exit strategy from Racom.

As to the 1999 agreements, Racom did not allege that the MHC board representatives withheld any relevant information about their relationship to MHC or their knowledge of the transaction from the Racom Board. Nor did Racom allege that the MHC board representatives participated in any way in the negotiations to undermine the arms-length nature of the valid agreements.

As to Melstad's participation in the exit strategy, the district court noted that MHC's primary concern in the exit strategy was to minimize the loss of their investment in Racom. "[I]t is clear from the memorandum that MHC's objective of preserving its investment was entirely aligned with the best interests of Racom because MHC could only protect its investment by maximizing Racom's value, whether or not that involved taking control of Racom." (App. at 349.) In addition, the court noted MHC had a right, as a preferred shareholder, to protect its interests. See Odyssey Partners v. Fleming Co., 735 A.2d 386, 415 (Del. Ch. 1999) ("Thus one who may be both a creditor and a fiduciary (*e.g.*, a director or controlling shareholder) does not by reason of that status alone have special limitations imposed upon the exercise of his or her creditor rights."). As the district court concluded, Shuttleworth failed to present facts supporting the breach of fiduciary duty claim.

Fourth, Shuttleworth asserted MHC and Melstad committed slander per se based on the actions of Russ White.[10] Racom asserts MHC directed White to call various Racom customers about the Delaware lawsuits. Racom alleged that during the calls White falsely stated that he was the vice president in charge of security, as opposed to vice president of general services. Further, White explained to the customers that MHC had asked Racom to make sure that the lawsuits would not affect service.

---

[10]White is an officer of MHC's corporate parent, MidAmerican Energy Company.

The district court determined that the alleged statements did not amount to slander per se because the statements could not injure Racom's business. "The fact that Mr. White might be in charge of security at Mid-American Energy or that MHC requested that Racom not allow the lawsuit to affect service has no bearing on Racom's ability to conduct business, which involves dealing with law enforcement and emergency services." (App. at 351.)

Finally, Shuttleworth asserted that the agreements lacked the necessary quorum of six Racom directors and that the directors violated their fiduciary duties in approving the agreements. Shuttleworth argued that the court should not enforce their agreement with MHC because when the initial 1996 agreement was made, Racom's Board lacked authority to enter into those agreements. However, the district court noted that Racom's corporate minutes reflected that at least six Racom board members were present at all board meetings, therefore, the evidence did not support this claim. We agree with the district court that the potential lack of the requisite number of board members was immaterial. See Rodgers v. Baughman, 342 N.W.2d 801, 806 (Iowa 1983) ("[A] party may waive a condition precedent to his own performance of a contractual duty, when such condition precedent exists for his sole benefit and protection, and compel performance by the other party who has no interest in the performance or nonperformance of the condition.").

In addition, the district court determined that Racom failed to demonstrate that the directors' informed decisions were not made "in good faith and in the honest belief that the action taken was in the best interests of the company." Aronson v. Lewis, 473 A.2d 805, 812 (Del. 1984) (applying Delaware's business judgment rule). Racom did not allege that any of the non-MHC directors who approved the

-11-

transaction acted outside this standard.[11]  The court concluded that even under the most stringent standards Racom's breach of fiduciary duty claims fail.

Shuttleworth makes much of the fact that it spent hundreds of hours with its client and hundreds of hours in legal research.  However, this case does not address the failure to adequately research the claim or facts of the case.  Instead, Shuttleworth persisted in asserting claims and defenses which were not justifiable either in law or in fact.

We determine that the district court did not abuse its discretion in finding that the claims and defenses were not supported by fact and law.  The district court also did not err in deciding that Shuttleworth used the claims and defenses for the purpose of delaying Racom's payment of money owed to MHC.

Our decision requires sensitivity to two areas.  First, Rule 11 embraces the idea that on occasion attorneys engage in litigation tactics that are unjustifiable within the broad bounds of our adversarial system, and that our system does not tolerate such tactics.  Cooter & Gell, 496 U.S. at 393.  Second, our application of Rule 11 also recognizes the adversarial nature of a system where attorneys zealously represent their clients.  However, the district court did not abuse its discretion in determining that even those attorneys with the highest credentials can violate Rule 11 by pursuing claims and defenses that do not have merit, and counsel should not put forth frivolous claims before the court.  The court concluded that "the behavior was not a single incident, as this order and previous orders demonstrate, the Racom attorneys established a pattern of persisting in these claims over the course of two separate resistances to summary judgment motions, as well as two separate attempts to extend

---

[11]The district court also noted that the MHC representatives did not constitute a majority of the Racom Board, did not control or dominate the Board, and did not withhold their interest in the 1999 Agreements with MHC.

those proceedings without offering valid reasons to do so." (App. at 421.) After reviewing the record, we cannot say that this conclusion amounts to an abuse of discretion. Accordingly, we affirm the district court's decision to impose Rule 11 sanctions.

### C. Amount of Sanctions

Finally, we address whether the amount of sanctions imposed is consistent with the conduct in this case. Rule 11 states that sanctions "shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(2).

Here, the district court determined that non-monetary sanctions such as issuing an admonition, reprimand, or censure, or requiring participation in other educational programs was inappropriate. In addressing monetary sanctions, the court noted that since it initiated the Rule 11 proceeding, it was unable to direct monetary sanctions toward MHC in order to remedy their expenditure of attorney fees. Fed. R. Civ. P. 11 advisory note ("a monetary sanction imposed after a court-initiated show cause order be limited to a penalty payable to the court and that it be imposed only if the show cause order is issued"). The court explained:

> Given the sheer size of the judgment in a case of this type, the Court could not possibly levy a sanction large enough to deter such behavior in the parties themselves; however, the Court believes that a sanction that outweighs the fees that an attorney might receive to wage such claims might accomplish this goal. Moreover, the Court expects that a person facing the loss of their business will seek the counsel of their attorney and ask the attorney to do whatever they can to forestall the undesirable result. On the other hand, attorneys are responsible for limiting their advocacy to that permissible under Rule 11, as well as to avoid the creation of unnecessary litigation costs to the parties and the Court.

(App. at 422-23.)  The court imposed a sanction in the amount of $25,000 or approximately three-fourths of fees and expenses of MHC's attorneys.  This court previously adopted the determination of a three-fourths of fees and expenses as an appropriate sanction in <u>Kirk Capital Corp. v. Bailey</u>, 16 F.3d 1485, 1491 (8th Cir. 1994).[12]

While the award here may seem rather large, such an award is appropriate.  The Seventh Circuit in <u>Vollmer v. Publishers Clearing House</u>, 248 F.3d 698 (7th Cir. 2001), determined that the district court's imposition of a $50,000 sanction was extremely large compared with other *sua sponte* sanctions.  <u>Id.</u> at 710.  The court approvingly noted that such a sanction may be appropriate, but "when the district court is cursory or unclear about its reasoning for imposing significant monetary sanctions, we have required that a more detailed explanation be provided."  <u>Id.</u> 711. Here, the district court explained in great detail its reasons for imposing $25,000 in

---

[12]Shuttleworth relies on <u>Kirk Capital</u>, however, it is distinguishable on several grounds.  First, <u>Kirk Capital</u> addressed the prior Rule 11.  We noted that the application of the current Rule 11 would have justified a different result. <u>Kirk Capital</u>, 16 F.3d at 1488.  Second, <u>Kirk Capital</u> did not address *sua sponte* sanctions, instead it awarded attorney fees to the opposing party.  Here, the district court used attorney fees as a guideline to determine the appropriate award of sanctions owed to the court.

-14-

sanctions.[13] In addition, the sanction imposed is less than one percent of the amount Racom attempted to avoid paying MHC.

III.   CONCLUSION

We affirm the district court's decision to impose Rule 11 sanctions in the amount of $25,000 against Shuttleworth.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[13]The district court explained:

While the Rule 11 sanction is not intended to compensate MHC, and cannot because the Court initiated this proceeding, the Court believes $25,000 is appropriate in light of these costs that the Racom attorneys forced MHC to incur. Moreover, the Court finds that given the large amounts of money involved, a $25,000 sanction is the minimum amount a Court can award in order to deter law firms from accepting fees in order to wage frivolous claims and defenses in order to delay the payment of large debts.

(App. at 423.)

-15-