# IN THE SUPREME COURT OF IOWA

No. 10–1172

Filed June 15, 2012

KRISTIN L. ROWEDDER, as
Conservator of GARY KRAL,

      Appellee,

vs.

MICHAEL ANDERSON, RICHARD F. ROSENER, MARK HELKENN,
RAYMOND HELKENN, McCORD INSURANCE & REAL ESTATE CORP.,
ROGER PREUL, and BERNEIL PREUL,

      Appellants,

and

COMSTOCK BROTHERS, MERRITT DANIEL COMSTOCK,
GEARY STEVEN COMSTOCK, DOUGLAS E. COMSTOCK,
and D.R. FRANCK,

      Defendants.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Crawford County, Jeffrey P. Neary, Judge.

Parties appeal an award of sanctions entered by the district court under Iowa Rule of Civil Procedure 1.413(1). **COURT OF APPEALS DECISION AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; AND CASE REMANDED WITH INSTRUCTIONS.**

Michael P. Jacobs of Rawlings, Nieland, Killinger, Ellwanger, Jacobs, Mohrhauser & Nelson, L.L.P., Sioux City, for appellant Rosener.

Earl G. Greene, III, of Woodke & Gibbons, P.C., L.L.O., Omaha, Nebraska, for appellants Helkenns.

Brandon R. Tomjack of Baird Holm, LLP, Omaha, Nebraska, for appellant Anderson.

Sean A. Minahan, Patrick G. Vipon, and Gage R. Cobb of Lamson, Dugan & Murray, LLP, of Omaha, Nebraska, for appellants McCord Insurance and Preuls.

Mark McCormick of Belin McCormick, P.C., Des Moines, Robert L. Laubenthal and Marvin O. Kieckhafer of Smith Peterson Law Firm, LLP, Council Bluffs, for appellee Rowedder.

**WIGGINS, Justice**.

Parties seek further review of a court of appeals decision affirming a district court order awarding $1000 in sanctions against plaintiff's counsel and making the sanctions payable to the Crawford County Jury and Witness Fund. We conclude the trial court did not abuse its discretion in fixing the amount of the sanction. We also conclude, however, the court abused its discretion in making the sanction payable to the jury and witness fund. Given the preference in our rule toward compensating victims, on remand the district court should enter an order requiring the sanction be paid in equal parts to the parties seeking the sanctions.

## I. Background Facts and Proceedings.

Between February 2004 and February 2005, Gary Kral, as the executor and sole heir of his father's estate, sold four forty-acre parcels of farmland located in Crawford County and owned by his father's estate to four different buyers. Kral worked with Roger and Berneil Preul of McCord Insurance and Real Estate Corporation to sell the parcels. Kral primarily communicated with Roger about his desire to sell the parcels. In order to avoid capital gains taxes, Kral demanded each parcel be sold for $2000 per acre, which was the value placed on the land in the probate estate.

Michael Anderson purchased the first parcel in February 2004. Comstock Brothers, a partnership consisting of Merritt Daniel Comstock, Geary Steven Comstock, and Douglas Comstock, bought the second parcel in March. In May, Richard Rosener bought the third parcel. Finally, Raymond Helkenn purchased the fourth parcel in February 2005. All of the buyers paid $2000 per acre.

In August 2005, Kral met with attorney Bradley Nelson about evicting Helkenn's brother, Mark, who was living in one of Kral's rental properties. Nelson became concerned Kral lacked the mental ability to take care of his own financial matters. After examining Kral's bank records, Nelson discovered what he deemed to be suspicious checks totaling over $200,000 to certain individuals. Nelson became convinced these individuals were taking advantage of Kral. Nelson then petitioned the district court to establish a conservatorship for Kral, which Kral accepted voluntarily. The court appointed Kristin Rowedder, Nelson's office manager, as conservator for Kral in September 2005.

In May 2006, Rowedder, as conservator for Kral, filed suit against Anderson, the Comstocks, the Helkenn brothers, the Preuls, and McCord Insurance. Robert Laubenthal served as the attorney on behalf of Rowedder and Kral. In that capacity, he signed and filed the petition as well as subsequent pleadings, motions, and resistances.

The petition alleged the buyers, the Preuls, and their real estate company defrauded Kral by purchasing or facilitating the purchase of his land at "extremely low" prices, despite the fact that they knew or should have known that he was incompetent to conduct these transactions. The petition also alleged "certain of the defendants"[1] conspired to divest Kral of his assets through real estate purchases. Finally, it alleged the Preuls and their real estate company were professionally negligent and breached a fiduciary duty to Kral in facilitating the sales. The petition sought to rescind the sales and requested that the court establish a constructive trust on each property.

---

[1]The district court sustained motions to dismiss by various defendants, noting the petition was too vague, but later allowed Rowedder to recast the allegations. A recast petition alleged all of the defendants had participated in the conspiracy.

After discovery commenced, Rosener, the Comstocks, the Preuls, and McCord Insurance filed motions to compel discovery. These motions centered on Rowedder's answers to interrogatories relating to evidence of the alleged fraud and conspiracy. Rowedder's answers repeatedly indicated she could not provide the specifics of her allegations until after the completion of discovery. In December, the district court ordered Rowedder to answer all of the discovery requests by January 20, 2007, or be subject to sanctions. On January 23, Rowedder filed a motion seeking an extension of this deadline.

Meanwhile, the Helkenns offered to sell their parcel back to Kral for the purchase price. After Rowedder refused, the Helkenns filed a motion for sanctions alleging Rowedder brought the action to harass, cause unnecessary delay, and needlessly increase the cost of litigation.

The Comstocks, Rosener, and Anderson filed separate motions for summary judgment. Rowedder resisted each. Following a hearing, the district court entered summary judgments finding Rowedder had failed to show any facts supporting her allegations despite the court having given her several opportunities to do so. Rowedder later resisted separate motions for summary judgment filed by the Preuls, McCord Insurance, and the Helkenns. Nonetheless, the district court entered summary judgments.

In January 2008, the Helkenns filed a request for a hearing on their previously filed motion for sanctions. Anderson, Rosener, and the Comstocks also filed motions for sanctions. Rowedder filed a notice of appeal. In February, the court stayed all of the motions before it pending the disposition of Rowedder's appeal.

All of the defendants, except the Helkenns, moved to dismiss the appeal as to them, arguing Rowedder had not timely or properly

perfected an appeal. We dismissed Rowedder's appeal without comment with respect to Anderson, the Comstocks, and Rosener, thereby upholding the summary judgments in their favor.

We transferred the balance of the appeal, which involved the claims against the Helkenns, the Preuls, and McCord Insurance, to the court of appeals. The court of appeals affirmed summary judgment in favor of the Helkenns, but reversed and remanded with respect to the claim of professional negligence against the Preuls and McCord Insurance.

On remand, the district court held a trial on the professional negligence claims against the Preuls and McCord Insurance. A jury found they did not breach any fiduciary duty but were negligent in the sales to Rosener and Helkenn. The jury awarded damages of $15,400. Rowedder filed a motion for a new trial. The Preuls and McCord Insurance moved for a directed verdict and later for judgment notwithstanding the verdict or, alternatively, a new trial. The district court denied these motions.

Meanwhile, following the dismissal of the appeal as to them, Rosener, Anderson, and the Helkenns renewed their motions for sanctions. These renewed motions asked the district court to sanction Rowedder and her attorneys. Rowedder resisted each motion.

The district court ordered sanctions against Rowedder's attorney, Laubenthal. In doing so, the court found that although Laubenthal's actions were not willful, vindictive, or taken in bad faith, the evidence demonstrated "the only actionable claims that ever existed were those against . . . McCord Insurance and Real Estate and the Preuls." The court noted Laubenthal did not have a prior history of sanctions. Further, the court stated it was presented with itemizations of attorney

fees incurred by the various parties seeking sanctions, but not with evidence of Laubenthal's ability to pay any sanctions imposed by the court. It also stated its belief that each party personally paid its own legal fees because it was not presented with any indication the parties had insurance coverage for their legal fees. The court assessed a sanction of $1000 and directed payment to the Crawford County Jury and Witness Fund. The court did not order sanctions against Rowedder.

The Helkenns, Anderson, and Rosener filed notices of appeal. The Preuls and McCord Insurance appealed the negligence verdict. We transferred the case to the court of appeals. The court of appeals found sufficient evidence to support the jury verdict in favor of Rowedder and against the Preuls and McCord Insurance. The court rejected the arguments by Anderson, Rosener, and the Helkenns that the sanctions were too low and that the court should not have made the sanction payable to the jury and witness fund.

Rosener and the Helkenns filed applications for further review, which we granted.

## II. Issues.

The court of appeals determined the district court did not abuse its discretion by awarding sanctions for $1000. The court of appeals also determined the order requiring the sanctions be paid to the Crawford County Jury and Witness Fund was proper under Iowa Rule of Civil Procedure 1.413(1). Finally, the court of appeals found the district court correctly overruled the motions of the Preuls and McCord Insurance for a directed verdict and for judgment notwithstanding the verdict or, alternatively, for a new trial. When we grant further review, we have the discretion to review all or part of the issues raised on appeal or in the application for further review. *In re Marriage of Becker*, 756 N.W.2d 822,

824 (Iowa 2008). In exercising our discretion, we choose only to review the amount of the sanctions and whether the court can require the sanction be paid to the jury and witness fund. Accordingly, we will let the court of appeals' determinations that the award of sanctions was not an abuse of discretion and the affirmance of the judgment against the Preuls and McCord Insurance stand as the final decisions of this court. *See Hills Bank & Trust Co. v. Converse*, 772 N.W.2d 764, 770 (Iowa 2009).

### III. Standard of Review.

We review a district court's order imposing sanctions under our rules of civil procedure for an abuse of discretion. *Everly v. Knoxville Cmty. Sch. Dist.*, 774 N.W.2d 488, 492 (Iowa 2009). An abuse of discretion occurs "when the district court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Schettler v. Iowa Dist. Ct.*, 509 N.W.2d 459, 464 (Iowa 1993). An erroneous application of the law is clearly untenable. *Waits v. United Fire & Cas. Co.*, 572 N.W.2d 565, 569 (Iowa 1997). When we review for an abuse of discretion, we will correct an erroneous application of the law. *Weigel v. Weigel*, 467 N.W.2d 277, 280 (Iowa 1991).

### IV. The Amount of the Sanction.

The Iowa Rules of Civil Procedure provide in relevant part:

> If a motion, pleading, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay the other party or parties the amount of the reasonable expenses incurred because of the filing of the motion, pleading, or other paper, including a reasonable attorney fee.

Iowa R. Civ. P. 1.413(1).

The primary purpose of sanctions under rule 1.413(1) is deterrence, not compensation. *Barnhill v. Iowa Dist. Ct.*, 765 N.W.2d 267, 276 (Iowa 2009). Under the American Rule, the losing litigant does not normally pay the victor's attorney's fees. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S. Ct. 1612, 1616, 44 L. Ed. 2d 141, 147 (1975). "Therefore, any sanction or shifting of fees and costs which is made, need not reflect actual expenditures." *United States ex rel. Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp.*, 95 F.3d 153, 171 (2d Cir. 1996).

We have dealt with the amount of a sanction under rule 1.413(1) on several occasions. In one case, we found the failure to impose a sanction to be an abuse of discretion. *See Breitbach v. Christenson*, 541 N.W.2d 840, 845–46 (Iowa 1995). In another, our most recent case involving the award of sanctions, we found the district court abused its discretion because the sanction included fees expended prior to the sanctionable conduct. *See Everly*, 774 N.W.2d at 495. There, we required the district court to determine the appropriate amount of a sanction after making specific findings as to " '(1) the reasonableness of the opposing party's attorney's fees; (2) the minimum to deter; (3) the ability to pay; and (4) factors related to the severity of the . . . violation.' " *Barnhill*, 765 N.W.2d at 277 (quoting *In re Kunstler*, 914 F.2d 505, 523 (4th Cir. 1990)); *accord Everly*, 774 N.W.2d at 495. In addition to these four factors, we have encouraged district courts to consider factors set forth by the American Bar Association.[2] *See Barnhill*, 765 N.W.2d at 277.

---

[2]These factors include (1) the good or bad faith of the offending party; (2) the degree of willfulness, vindictiveness, negligence, or frivolousness involved in the offense; (3) the offending party's knowledge, experience, and expertise; (4) the offending party's

In making its ruling, the district court attempted to make the specific findings of fact as required by *Everly*.

The court noted that the parties presented it with itemizations of attorney fees incurred by the parties seeking sanctions, that the parties did not present it with any indication of the parties' insurance coverage for their legal fees, and that it "was left with the impression that each party who sought sanctions personally paid their legal fees."[3]  The court, however, failed to make a specific finding as to the reasonableness of the fees.

Further, the court made a finding as to the minimum amount to deter.  It found that

> the mere imposition of sanctions has in and of itself an impact of significance deterrence upon the person upon which the sanctions are imposed. . . .  [T]he court is satisfied

_____

prior history of sanctionable conduct; (5) the reasonableness and necessity of the out-of-pocket expenses the offended party incurred as a result of the misconduct; (6) the nature and extent of prejudice suffered by the offended party as a result of the misconduct, not including out-of-pocket expenses; (7) the relative culpability of the client and his or her counsel, and the impact an inquiry into their relative culpability would have on their privileged relationship; (8) the risk of chilling the specific type of litigation involved; (9) the impact the sanction would have on the offending party, including the offending party's ability to pay a monetary sanction; (10) the impact the sanction would have on the offended party, included the offended party's need for compensation; (11) the relative magnitude of the sanction necessary to achieve the sanction's goals; (12) any burdens on the court system attributable to the misconduct, including the consumption of judicial time, incurrence of juror fees, and other court costs; (13) the degree to which the offended party attempted to mitigate any prejudice he or she suffered; (14) the degree to which the offended party's behavior caused the expenses for which recovery is sought; (15) the extent to which the offending party persisted in advancing a position while on notice that the position was not well grounded in fact, warranted by existing law, or warranted by a good faith argument for the extension, modification, or reversal of existing law; and (16) the time of, and the circumstances surrounding, any voluntary withdrawal of a pleading, motion, or other paper. *Barnhill v. Iowa Dist. Ct.*, 765 N.W.2d 267, 276–77 (Iowa 2009); ABA Section of Litigation, *Standards and Guidelines for Practice Under Rule 11 of the Federal Rules of Civil Procedure* (1988), *reprinted in* 121 F.R.D. 101, 125–26 (1988).

[3]The fact that an opposing party's attorney fees are paid by an insurance coverage will not defeat a party's claim for sanctions.  *Pelletier v. Zweifel*, 987 F.2d 716, 718 (11th Cir. 1993).

that a court-ordered sanction of $1,000 along with the stigma attached to the mere imposition of sanctions is [a] sufficient sanction [to deter future conduct].

As to the ability to pay, the court stated it could not make a finding as to the ability of Laubenthal to pay a sanction because the court did not have any evidence as to Laubenthal's financial situation. We agree with the district court that the record is devoid of any evidence that would allow the court to make a finding as to Laubenthal's ability to pay.

Finally, the court made specific findings as to the severity of the violation. In this regard, the court found Laubenthal did not take his actions in bad faith. The court also found his actions were not vindictive or willful insofar as to suggest he acted with evil intent. The court further found Laubenthal did not have a prior history of court-imposed sanctions.

We realize the district court erred by not making a specific finding as to the reasonableness of the opposing parties' attorneys' fees. Additionally, the record did not contain any evidence as to Laubenthal's ability to pay. It was Laubenthal's obligation to set forth evidence of his ability to pay. *Kunstler*, 914 F.2d at 524. By not producing evidence of his ability to pay, Laubenthal took the risk that he would not have the ability to pay. However, even with these deficiencies, the district court did not abuse its discretion in fixing the amount of the sanction. Deterrence is the primary goal of sanctions, not compensation of the opposing party. The district court went to great length to make a detailed finding that a $1000 sanction is sufficient to deter any future conduct regardless of the opposing parties' attorneys' fees. Therefore, under the record made, we find the district court did not abuse its discretion in awarding a $1000 sanction. Consequently, we affirm the district court's award of $1000 as the proper sanction.

## V. Who Should Receive the Sanction Payment?

The district court directed Laubenthal to pay the sanction to the Crawford County Jury and Witness Fund rather than to the parties seeking sanctions. It is true that rule 1.413(1) does not require that sanctions be paid to the opposing parties. The rule merely provides that

> the court . . . shall impose . . . an appropriate sanction, which may include an order to pay the other party or parties the amount of the reasonable expenses incurred because of the filing of the motion, pleading, or other paper, including a reasonable attorney fee.

Iowa R. Civ. P. 1.413(1). Accordingly, while the rule states the court "shall impose" an appropriate sanction for any violation of the rule, the proceeds of that sanction may be allocated at the court's discretion. *Id.*

However, rule 1.413(1) does not specifically name any particular authorized recipient other than the offended party. This is different from Federal Rule of Civil Procedure 11, which, after it was amended in 1993, directs payment of a penalty "into court" as the first potential destination for sanction proceeds. Fed. R. Civ. P. 11(c)(4). Rule 11 also allows, "payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation" but only if specifically requested in a motion and warranted by the situation.[4] *Id.*

---

[4]The 1993 amendments to Rule 11 consciously elevated the primacy of deterrence and significantly demoted concerns about victim compensation, thereby giving preference to the courts as the recipient of sanction proceeds: "Since the purpose of Rule 11 sanctions is to deter rather than to compensate, the rule provides that, if a monetary sanction is imposed, it should ordinarily be paid into court as a penalty." Fed. R. Civ. P. 11 advisory committee's notes to 1993 amendments.

However, federal courts have held compensation of wronged parties remains a valid subordinate purpose that supports the primary goal of deterrence. For example, the Sixth Circuit stated, "[I]t is . . . clear that effective deterrence sometimes requires compensating the victim for attorney fees arising from abusive litigation." *Rentz v. Dynasty Apparel Indus., Inc.*, 556 F.3d 389, 400 (6th Cir. 2009). Therefore, even if victim compensation is not considered a stand-alone purpose equivalent to deterrence, it will sometimes be necessary if deterrence is to be fully achieved. "If compensation

Our rule 1.413(1) makes victim compensation a more prominent concern than Rule 11 because it allows offended parties to be partially or completely reimbursed either "upon motion or upon [the court's] own initiative." *Id.*

There are strong reasons for first directing sanctions to the injured parties. First, as we have noted, the reasonable expectation that parties will be the beneficiaries of sanctions should they prevail provides some of the incentive needed to motivate those parties to invest the time and money necessary to pursue legitimate sanction claims. If injured parties do not expect even to recoup the cost of their additional sanction filings, some may not be willing or financially able to file motions for sanctions. This would not only compound the personal injustice that they have already suffered, but it could undermine the integrity of our judicial system by diminishing the deterrent effect of sanctions. Accordingly, because the primary goal of rule 1.413(1) is deterrence, the primary goal is best achieved in most circumstances if sanctions are first allocated to the victims who made the investment to pursue them.[5]

Second, under Iowa law, although deterrence is clearly the primary goal of rule 1.413(1), the rule serves other purposes, such as maintaining professionalism in the practice of law. *Barnhill,* 765 N.W.2d at 273. Perhaps the most important secondary purpose is partial compensation of the victims. *See id.* at 276. Of course, victim compensation must

_____

was not a recognizable basis for Rule 11 awards, aggrieved litigants would have little incentive to pursue sanctions thus diminishing the important deterrent effect of Rule 11." *Brandt v. Schal Assocs., Inc.*, 960 F.2d 640, 646 (7th Cir. 1992).

[5]The Federal Rules also recognize that sometimes "deterrence may be ineffective unless the sanction not only requires the person violating the rule to make a monetary payment, but also directs that some or all of this payment be made to those injured by the violation." Fed. R. Civ. P. 11 advisory committee's notes to 1993 amendments.

clearly defer to deterrence when it comes to setting the *amount* of a sanction. *See id.* (" 'A sanction . . . must be limited to what suffices to deter repetition of such conduct.' " (quoting Fed. R. Civ. P. 11(c)(4))). Nonetheless, courts should accommodate the secondary purpose of compensation when considering the *allocation* of the proceeds of a sanction.

We do not now define the precise standards for choosing between parties and the judicial system, but given the strong arguments in favor of victim compensation, we would expect courts to provide special reasons with specific findings as to why they exercised their discretion not to benefit those who have been most directly harmed by the sanctionable conduct. One valid reason for allocating sanctions to the judicial system would be the fact that the minimum sanction necessary for deterrence actually exceeded the costs to the harmed litigants. In such a case, the excess should be paid to the judicial system so that parties do not receive a windfall and so that the system can be partially reimbursed for the unnecessary costs it incurred.

Therefore, we find the district court's order requiring Laubenthal to pay the sanction to the Crawford County Jury and Witness Fund without a specific finding as to why it should be paid to the jury and witness fund unreasonable in light of the preference in rule 1.413(1) to award the sanction to the party seeking it. Consequently, the court abused its discretion when it ordered Laubenthal to pay the sanction to the Crawford County Jury and Witness Fund.

## VI. Disposition.

Although we find, under the record made, the district court did not abuse its discretion in fixing the amount of the sanction at $1000, the court abused its discretion by ordering Laubenthal to pay the sanction to

the Crawford County Jury and Witness Fund. Given rule 1.413(1)'s preference of compensating victims, we hold the district court should enter an order requiring Laubenthal to pay the sanction in equal sums to defendants Anderson, Rosener, and the Helkenns as partial reimbursement of the legal fees they incurred in defending against the unfounded claims brought against them. We assess the costs of this appeal against Laubenthal.

**COURT OF APPEALS DECISION AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; AND CASE REMANDED WITH INSTRUCTIONS.**

All justices concur except Waterman, J., who concurs in part and dissents in part, and Mansfield, J., who takes no part.

**WATERMAN, Justice (concurring in part and dissenting in part).**

I respectfully concur in part and dissent in part. I agree with the majority's affirmance of the district court's findings that attorney Laubenthal violated Iowa Rule of Civil Procedure 1.413(1) and that the imposition of sanctions is warranted. And, I agree with the majority that the district court, under the circumstances of this case, abused its discretion by directing payment of the monetary sanction into the Crawford County Jury and Witness Fund rather than to the victims. I must dissent, however, on the amount of the sanction, $1000, which in this context is so low as to constitute another abuse of discretion.

Citing *Barnhill v. Iowa District Court*, 765 N.W.2d 267, 276 (Iowa 2009), the majority correctly recognizes "the primary purpose of sanctions under rule 1.413(1) is deterrence, not compensation." But, victim compensation remains a subsidiary goal of the rule, as the majority also acknowledges. *See Barnhill*, 765 N.W.2d at 279 ("[A] $25,000 sanction is appropriate both to deter Barnhill (and other attorneys) from similar conduct in the future and to partly compensate [the victim] for expenses incurred."). Neither goal is served by this slap on the wrist. The victims in this case incurred fees totaling $63,926 defending the frivolous claims through appeal. Laubenthal did not challenge the reasonableness of those fees. Those fees are a factor to determine the appropriate amount of a monetary sanction. *Id.* at 276–77. Curiously, the majority cites *Barnhill* for other propositions without noting the $25,000 sanction we so recently approved in that case for analogous misconduct. It is difficult to understand how a sanction of one sixty-fourth of the victims' expenses sends the right message here.

The majority opinion gives short shrift to the underlying facts warranting sanctions. The victims were forced to spend several years defending the fraud and conspiracy claims found so meritless as to be sanctionable. Laubenthal continued to litigate those claims despite lacking evidence or caselaw to support them. He vigorously resisted the victims' motions for summary judgment, even though he could not back up his client's claims after conducting discovery. "Summary judgment is not a dress rehearsal or practice run; it 'is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.'" *Hammel v. Eau Galle Cheese Factory,* 407 F.3d 852, 859 (7th Cir. 2005) (citation and internal quotation marks omitted). Today's majority fails to mention the criticism by Judge Jacobson, who granted summary judgment against Laubenthal's client:

> At the time they were served, interrogatories and requests for production of documents many months ago, Plaintiffs apparently had no evidence to support the allegations in the petition against these defendants. Despite a motion to compel, the plaintiffs still were not able to produce any such evidence. After the court's order of December 21, 2006, the plaintiffs were unable to produce any such evidence. When asked directly at both the January 29 hearing and the February 23 hearing, "Where is your evidence?" Neither of plaintiffs' attorneys were able to provide any whatsoever.
>
> . . . .
>
> Plaintiffs have not only been challenged to produce evidence of such a tort by the court's rulings, but have been challenged to do so in open court, in the court's chambers, at least three times. The court cannot help but believe if this evidence existed, the court would have seen it by now.

Laubenthal did not stop there. He appealed despite the lack of evidence to support these claims. The court of appeals, in affirming summary judgment, noted "plaintiff points us to no case law identifying

similar conduct as actionable." *Rowedder v. Helkenn*, No. 08–0117, 2009 WL 1492558, at *7 (Iowa Ct. App. 2009). Rule 1.413 allows ample room for creativity and "fight[ing] uphill battles." *Barnhill*, 765 N.W.2d at 279. Laubenthal, however, crossed the line "between zealous advocacy and frivolous claims." *Id.* This record warrants a sanction much larger than $1000, particularly given the considerable amount of scarce judicial resources needlessly spent on these frivolous claims. *See id.* at 273 (noting that, by deterring frivolous lawsuits, sanctions "avoid the general cost to the judicial system in terms of wasted time and money").

The district court, with the apparent approval of today's majority, justified the low amount by noting the accompanying "stigma" of court-ordered sanctions. Stigma will accompany every judicial finding sanctioning an attorney, and any court-ordered sanction would be an anathema to most Iowa lawyers. Yet, no authority is cited for the proposition that a low-dollar sanction can be justified by the accompanying stigma. "Stigma" is not one of the sixteen factors in the American Bar Association guidelines or the four *Kunstler* factors we encouraged courts to apply in *Barnhill. Id.* at 276–77 (citing *In re Kunstler*, 914 F.2d 505, 523 (4th Cir. 1990); ABA Section of Litigation, *Standards and Guidelines for Practice Under Rule 11 of the Federal Rules of Civil Procedure* (1988), *reprinted in* 121 F.R.D. 101, 125–26 (1988)). Nor is the stigma of a sanction mentioned as a factor to consider in setting the dollar amount in any of the numerous cases applying the Federal Rule of Civil Procedure 11, the counterpart to our rule 1.413(1). Laubenthal made no record that the stigma of this sanction would impact his practice. No substantial evidence in the record supports a finding that stigma enhanced his sanction. Accordingly, the district court misapplied the law by relying on stigma to justify the low amount.

This misapplication of the law is an abuse of discretion. *Everly v. Knoxville Cmty. Sch. Dist.*, 774 N.W.2d 488, 492 (Iowa 2009) ("Although our review is for an abuse of discretion, we will correct erroneous applications of law.").

More importantly, the $1000 sanction is a small downside to the large upside Laubenthal apparently saw in this case when he agreed to a one-third contingent fee for all recoveries in a written agreement acknowledging "[i]n excess of $200,000 has been fraudulently obtained." The tension between fear and greed regulates much human behavior, including tax compliance and hardball litigation. What is the deterrent effect of a $1000 sanction when the lawyer anticipates a potential fee over sixty times that amount? *See Barnhill*, 765 N.W.2d at 278 (noting a larger sanction needed for deterrence in cases "where there is a potential for a hefty settlement"). Notably, Laubenthal offered no evidence of an inability to pay a larger sanction. *Cf. id.* at 277 (affirming $25,000 sanction despite Barnhill's statement "a large sanction will put [my firm] out of business").

In *Barnhill*, we approvingly quoted federal appellate precedent concluding "*de minimis* sanctions are 'simply inadequate to deter Rule 11 violations.'" *Id.* at 276 (quoting *Rentz v. Dynasty Apparel Indus., Inc.*, 556 F.3d 389, 400–02 (6th Cir. 2009) (reversing $2500 sanction as so low as to be an abuse of discretion)). We specifically concluded a sanction of less than $25,000 against Barnhill would be insufficient " 'to deter repetition of such conduct or comparable conduct by others similarly situated.'" *Id.* at 278 (quoting Fed. R. Civ. P. 11(c)(4)). We noted in *Barnhill* that the Sixth Circuit determined "a $2,500 sanction was not sufficient to deter where defendants incurred nearly $30,000 in attorneys' fees due to sanctionable conduct." *Id.* (citing *Rentz*, 556 F.3d

at 402). Yet, three years later the majority now concludes a $1000 sanction is sufficient despite victim fees exceeding $63,000.

Today's majority pays lip service to the primary goal of our rule—deterrence—while approving a *de minimis* sanction. In *Barnhill*, we noted "the twin purposes of compensation and deterrence set forth in our case law" were served by the sanction of $25,000 when that victim's fees were $148,596. *Id.* at 277. Applying the same one-to-six ratio here warrants a sanction of $10,500. The Eighth Circuit affirmed a $25,000 sanction imposed sua sponte by Chief Judge Pratt, noting it was approximately three-fourths the victim's fees and expenses. *MHC Inv. Co. v. Racom Corp.*, 323 F.3d 620, 621, 627–28 (8th Cir. 2003). That case involved similar misconduct, sanctioning counsel who "persisted in asserting claims and defenses which were not justifiable either in law or in fact." *Id.* at 626. As here, the sanctioned attorneys had previously unblemished records and impressive credentials. As here, the district court found the counsel in *Racom Corp.* violated the rule by continuing to litigate claims and defenses discovery revealed to be meritless. *Id.* But, unlike here, the sanction upheld in *Racom Corp.* was calibrated to send the right message.

I would reverse the $1000 amount of the sanction and remand for the district court to enter a sanction of at least $10,000 payable to the victims in equal parts.